# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>iCloud account connected to Apple iCloud identifier<br>varela.abraham97@icloud.com (Subject Account) | Case No. '25 MJ3774 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____Northern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952,960 | Importation of Controlled Substances |
| 21 U.S.C. § 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:
See Affidavit of HSI SA James Preston, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*JAMES E PRESTON JR* Digitally signed by JAMES E PRESTON JR
Date: 2025.07.07 11:02:36 -07'00'

*Applicant's signature*

James Preston, HSI SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____Telephone____ *(specify reliable electronic means)*.

Date: 07/08/2025

*Judge's signature*

City and state: San Diego, CA     Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, James Preston, Special Agent, Homeland Security Investigations ("HSI"), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant under Title 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with the iCloud account connected to the Apple iCloud identifier **varela.abraham97@icloud.com**, which is used by Hugo Abraham VARELA Navarro ("Defendant" or "VARELA") (the **Subject Account**), for items which constitute evidence of violations of Title 21, United States Code, Sections 952, 960, and 963, as more fully described in Attachment B.

2. For the reasons set forth below, I believe there is probable cause for the requested warrant for the **Subject Account**, the contents for which are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at One Apple Park Way, Cupertino, California 95014. The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B, which are attached hereto and incorporated herein.

## TRAINING & EXPERIENCE

3. I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since May of 2022. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7).

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of

controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience,

and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

## BACKGROUND CONCERNING APPLE[1]

7. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

8. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

   a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and iCloud.com.

   b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

   c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/iCloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

3

iCloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content,

4

including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

9. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @iCloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

10. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

11. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP

5

addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

12. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through iCloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

13. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS

device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

14. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

15. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the target offenses. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the target offenses.

16. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the

7

Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows Investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

17. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

18. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from the App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

19. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## FACTS IN SUPPORT OF PROBABLE CAUSE

20. On March 4, 2025, at approximately 6:45 a.m., Defendant Hugo Abraham VARELA Navarro, ("VARELA"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #24. VARELA was the driver, sole occupant, and registered owner of a 2009 Honda Civic ("the vehicle") bearing California license plates.

8

21. A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the passenger side of the vehicle.

22. A Customs and Border Protection Officer ("CBPO") received two negative Customs declarations from VARELA. VARELA stated he was crossing the border to go to Chula Vista, California. The CBPO asked VARELA if he had any work done to the vehicle recently and VARELA replied "No." The CBPO asked VARELA if he brought anything from Mexico into the United States for anyone and VARELA replied "No." The CBPO asked VARELA if he was going to bring anything from the U.S. to Mexico for anyone and VARELA replied "No." The CBPO asked VARELA if he was in possession of his car for the past three days and VARELA replied "Yes." The CBPO noticed that VARELA's body appeared very rigid, and that VARELA was very stiff and gripping the steering wheel. The CBPO used a density tool on the vehicle and received readings of 55 and 80 on the rocker panels. The vehicle was referred for further inspection.

23. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the rocker panel area of the vehicle.

24. Further inspection of the vehicle resulted in the discovery of 31 total packages concealed in compartments in the rear wheel wells and rocker panel areas of the vehicle. 15 of the packages contained a substance, a sample of which field tested positive for the characteristics of Cocaine, with a total approximate weight of 17.84 kgs (39.33 lbs.); 15 of the packages contained a substance, a sample of which field tested positive for the characteristics of Methamphetamine, with a total approximate weight of 7.94 kgs (17.50 lbs.); 1 of the packages contained a substance, a sample of which field tested positive for the characteristics of Heroin, with a total approximate weight of .68 kgs (1.50 lbs.).

25. VARELA was placed under arrest at approximately 9:05 a.m.

26. During a post-Miranda interview, VARELA admitted that last week he was paid to bring money from the United States into Mexico. VARELA stated he was paid $1,000 USD and was given the vehicle he was driving today as payment to bring the money

9

into Mexico. VARELA stated after work last week he drove the vehicle to Los Angeles and left the vehicle with the keys in the glove compartment for the money to be placed in the vehicle. VARELA stated he then drove the vehicle to his house in Mexico and the individuals he was working for took the car to unload the money. VARELA stated he was told the money was going to be placed in the dashboard/center console area. VARELA gave consent to search his cell phone. After a review of the phone, agents re-interviewed VARELA. VARELA was reminded of his Miranda rights and stated he was still willing to speak without an attorney present. VARELA stated that on three previous occasions he was paid $1,000 USD each time to bring cash from the United States into Mexico. VARELA stated today he was being paid $1,000 USD to again bring cash from the United States into Mexico.

27.     VARELA was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

28.     An iPhone was seized by CBP Officers. During the post-arrest interview, VARELA claimed ownership of the iPhone and gave consent for HSI agents to search the iPhone. A review of the Cellebrite download of the iPhone indicated that it used an iCloud account with the Apple iCloud identifier **varela.abraham97@icloud.com** (the **Subject Account**).

*Justification for Data and Date Range Sought*

29.     Based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that individuals involved in drug trafficking crimes often use cell phones in the weeks and months prior to and during drug trafficking activities, so those cell phones (and the service accounts used on the cell phones) could contain communications, writings, images, call logs, contacts, records, videos, attachments, internet searches, location data, or photographs:

10

a) tending to indicate efforts to import controlled substances into the United States;

b) tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances within the United States;

c) tending to identify co-conspirators, criminal associates, or others involved in the importation of controlled substances within the United States;

d) tending to identify travel to or presence at locations involved in the importation of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e) tending to identify the user of, or persons with control over or access to, the **Subject Account**; and/or

f) tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

30. I also know, based on my training and experience, that iCloud accounts can be used to backup data from multiple devices over a long period of time. For example, one iCloud account can be used to store and backup data from prior cell phones that are no longer in use, as well as current cell phones that are in use. In this manner, an iCloud account is likely to contain evidence regardless of whether a particular cell phone or device has been in use for a more limited period of time.

31. For the **Subject Account**, used by Defendant, this warrant seeks information from his account between **February 4, 2025** (one month prior to the instant offense) up to and including **March 5, 2025** (one day after the instant offense). Based on my training and experience, the days and weeks leading up to the instant offense likely involved preparation and communication between Defendant and co-conspirators. In the days after a drug trafficking event, it is also common for co-conspirators to communicate about their efforts

11

to conceal their crime, exposure and risks of apprehension, the destruction of evidence, and law enforcement efforts. Based upon the above, as well as my experience investigating this case, I believe that the **Subject Account** is likely to contain relevant evidence in this case.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

32.  Law enforcement downloaded Defendant's iPhone pursuant to consent.

### PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

33.  Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Apple are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Apple for the relevant accounts and then to analyze the contents of those accounts on the premises of Apple. The impact on Apple's business would be disruptive and severe.

34.  Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the **Subject Account**, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Apple, to protect the privacy of ISP subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, HSI seeks authorization to allow Apple to make a digital copy of the entire contents of the account subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

35.  Analyzing the data to be provided by Apple may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be

reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. The ISPs do not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

36. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by the ISP, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

37. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the **Subject Account** and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

13

38. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

39. Based on the foregoing, there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960, and 963 and will be found at the premises to be searched as provided in Attachment A.

JAMES E PRESTON JR  
*Digitally signed by JAMES E PRESTON JR*  
*Date: 2025.07.07 11:03:43 -07'00'*

James Preston  
Special Agent  
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 8th day of July 2025

HON. MICHAEL S. BERG  
United States Magistrate Judge

14

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with:

The iCloud account connected to the Apple iCloud identifier **varela.abraham97@icloud.com**, used by used by Defendant Hugo Abraham Varela Navarro (the "**Subject Account**"), that is stored at premises owned, maintained, controlled, or operated by Apple Inc.

Apple, Inc. is an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records and data located at One Apple Park Way, Cupertino, California 95014.

# ATTACHMENT B
## Particular Things to be Seized

I. **Service of Warrant**

The officer executing the warrant shall permit Apple Inc., as the custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. **Items to be Provided by Apple Inc. ("Apple")**

For the iCloud account connected to the Apple iCloud identifier **varela.abraham97@icloud.com**:

    a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

    b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

      c.      The contents of all emails associated with the account from **February 4, 2025** (one month prior to the instant offense) up to and including **March 5, 2025** (one day after the instant offense), including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

      d.      The contents of all instant messages associated with the account from **February 4, 2025** (one month prior to the instant offense) up to and including **March 5, 2025** (one day after the instant offense), including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

      e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

      f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all

Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

      g.    All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps to include date and time stamps;

      h.    All records pertaining to the types of service used;

      i.    All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

      j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

### III. Information to be Seized by the Government

The search of the data supplied by Apple pursuant to this warrant will be conducted by HSI as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of **February 4, 2025** (one month prior to the instant offense) up to and including **March 5, 2025** (one day after the instant offense) and to the seizure of communications of any form, writings, images, call logs, contacts, records, videos, attachments, internet searches, location data, or photographs:

    a)    tending to indicate efforts to import controlled substances within the United States;

    b)    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances within the United States;

18

    c)    tending to identify co-conspirators, criminal associates, or others involved in the importation of controlled substances within the United States;

    d)    tending to identify travel to or presence at locations involved in the importation of controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e)    tending to identify the user of, or persons with control over or access to, the **Subject Account**; and/or;

    f)    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.